## 2490.   VEAL *v.* THE STATE.

1. The evidence authorized the conviction of voluntary manslaughter.
2. While it is true that "affidavits relating to a ground of a motion for
   a new trial which are not referred to therein, nor attached to the
   motion as exhibits, nor filed under order of the judge and then made
   a part of the record, can not be considered by this court when trans-
   mitted as a part of the record," yet this power of the judge to approve
   the affidavits and order them filed as a part of the record, in the nature
   of a brief of the evidence, does not expire until he has signed and
   certified the bill of exceptions.
3. The trial judge did not abuse his discretion in refusing to grant a
   new trial on account of the alleged bias and prejudice of one of the
   jurors; he having fully heard the evidence submitted pro and con on
   the issue. RUSSELL, J., dissents from this part of the decision.
4. The remarks made by the court to the jury, in regard to the probable
   length of time they would be engaged in service on the case, were
   not such as to authorize the grant of a new trial.

Conviction of manslaughter; from Carroll superior court—
Judge Edwards. February 9, 1909.

Argued March 23,—Decided May 12, 1910.

*R. R. Arnold, S. Holderness, G. E. Roop,* for plaintiff in error.
*J. R. Terrell, solicitor-general,* contra.

POWELL, J.   1. Veal was indicted for murder and convicted of voluntary manslaughter.   The evidence of the State would have authorized a conviction of murder.   The accused relied upon his statement to the jury, which, if they had fully believed it, might have authorized them to acquit him on the ground that the homicide was justifiable.   The statement was disproved in part.   Besides, it was within the province of the jury to believe a part and disbelieve the remainder.   They were authorized to find that the defendant shot the deceased because of an assault which the latter made upon him, and, therefore, that the homicide was voluntary manslaughter.   His counsel makes the ingenious argument that because the defendant in his statement referred to persons who were then present in the court, by whom his assertions could be disproved if they were not true, and because the State did not put up these witnesses to contradict him, the State is estopped from contesting the truthfulness of the defendant's statement as to these matters.   No authority is cited for this proposition, and we know no rule of law establishing it.   It is a matter that the jury may consider; on the other hand, the jury would be fully authorized to take the view that if the defendant really believed that he could prove by these witnesses all the things which he stated were within their knowledge, he himself would have put up the witnesses to prove the facts, instead of resting upon his own unsupported statement.

2.   The main ground of the motion for new trial consists in an attack upon one of the jurors.   The movant offered a number of affidavits to impeach his fairness, and the State replied by affidavits making a counter-showing.   The plaintiff in error insists that while this court can consider the affidavits offered by him, because they were attached to his motion as exhibits and duly filed with it, yet we can not consider the affidavits of the State, because they have not been brought before the court properly.   After the bill of exceptions was tendered, but before it was certified, the judge passed an order making the affidavits which had been offered by the State, and which had been duly identified by the signature of the judge, a part of the record, and directing that they be filed as such; and under the order of the judge and the specifications in the bill of exceptions itself, these affidavits have been transmitted. It has been frequently held that affidavits "relating to a ground

of a motion for a new trial which are not referred to therein, nor attached to the motion as exhibits, nor filed under order of the judge and then made a part of the record, can not be considered by this court when transmitted as a part of the record." *McDonald* v. *State,* 129 *Ga.* 452 (59 S. E. 242); *Glover* v. *State,* 128 *Ga.* 1 (57 S. E. 101); *Sasser* v. *State,* 129 *Ga.* 542 (59 S. E. 255); *Summerlin* v. *State,* 130 *Ga.* 791 (61 S. E. 849). Yet it will appear from the cases cited that this power of the judge to make affidavits a part of the record, in the nature of a brief of the evidence, does not expire until he signs and certifies the bill of exceptions. He has the same power in this respect that he has as to a brief of the evidence. He can approve the brief of the evidence and make it a part of the record at any time before the bill of exceptions is finally certified, though he has finally passed upon the motion for new trial in the meantime. *Milton* v. *Savannah,* 121 *Ga.* 89 (48 S. E. 684); *Baird* v. *Bate,* 114 *Ga.* 117 (39 S. E. 943); *Ga. R. Co.* v. *Greer,* ante, 292 (66 S. E. 791).

3. The judge heard the evidence pro and con as to the juror's alleged bias and prejudice, and his alleged improper communications to the jury of which he was a member. He filed a most excellent opinion in connection with his decision on this ground; and, after carefully looking into the matter, we are unwilling to say that he abused his discretion.

4. It appears that while the trial was in progress, probably at the close of the first day of the trial, and after the judge had cautioned the jurors against a separation and had admonished them as to their conduct pending the trial, one of the jurors inquired, "Will we be kept together over night?" To which the judge replied, "You will be kept together until a verdict is made. I do not know how long it will take. A good many witnesses are sworn. It may take two days and it may take longer." The contention is that this amounted to duress and coercion; that it tended to force the jury to agree upon a verdict; that it was tantamount to telling them they would be kept indefinitely unless they did agree. We have no idea that the jury, as intelligent men, put any such literal meaning upon the language of the judge; they understood that he merely meant that they would not be allowed to disperse until the case was ended—not that he intended to hold them indefinitely if they did not agree when later the case should be submitted to them

for decision. The judge was addressing his attention and that of the jury to the exigency then before them.

*Judgment affirmed. Russell, J., dissents.*